McDERMOTT, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*September 7 — September 26, 1895.*

(1) *Practice: Special verdict: Statement of facts by judge.* (2) *Appeal: Presumptions to support judgment.* (3, 4) *Railroads: Injury from defective highway crossing: Contributory negligence: Court and jury.*

1. The trial judge prefaced the questions submitted for a special verdict with a statement of facts which he said were established by uncontradicted testimony. A certificate signed by the judge, and called a bill of exceptions, stated that the "special verdict found by court and jury" included all the facts which the court deemed essential to the determination of the case, and that it was upon those facts, which the court found to be sustained by the evidence, that the judgment was ordered. On appeal, under the special circumstances of this case, the statement of facts by the judge, though anomalous and perhaps not properly before this court, is treated as a part of the verdict.

McDermott vs. The Chicago, Milwaukee & St. Paul R. Co.

2. Where the evidence is not before this court and there was no general verdict it will be presumed in support of a judgment in favor of the plaintiff that every averment of the complaint not negatived by the special verdict was proven at the trial.

3. The situation arising from a sharp curve and slant of a railway track as it crosses a highway obliquely may be such as to make it a question for the jury whether or not the crossing was insufficient and unsafe by reason of the elevation of the rails an inch above the planks of the crossing.

4. A person injured while driving over a defective railway crossing with a bobsleigh on which was a wagon box loaded with 200 feet of lumber in twelve-foot boards was not necessarily guilty of contributory negligence because he stood upon such lumber.

APPEAL from a judgment of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

Personal injuries. The testimony is not preserved by a bill of exceptions. At the close of the testimony the following statement of facts was made by the circuit judge to the jury.

"In the year 1830, Bracken, Irvine, and Ansley, proprietors of the land, platted Irvine's addition to the then village of Mineral Point. One of the streets upon said plat was Commerce street, which ran north and south, and apparently was sixty-six (66) feet in width.

"In the year 1853, the trustees of the village of Mineral Point, at the suggestion of the Mineral Point Railroad Company, which was constructing a railroad from Warren, on the Illinois Central Railroad, to Mineral Point, vacated all of Commerce street south of Second street, and also other streets and alleys south of Second street, and a number of lots lying south of said point, and set over all of said vacated streets and alleys for railroad and depot purposes for the use of said railroad company. This railroad was built into Mineral Point in the year 1857. The depot building of said railroad was built upon said vacated ground, east of Commerce street, at a place about 200 feet south of Second street.

McDermott vs. The Chicago, Milwaukee & St. Paul R. Co.

On the east of the depot building was the passenger track, and on the west of it the freight track, the western rail of which was on the east line of what had been Commerce street. South of the passenger depot, and in line with it, was the freight depot, and south of the freight depot about 200 feet, and partly in what had been Commerce street, were located the stock yards of the railroad company. The railroad track to the roundhouse crossed what had been Commerce street diagonally, north of the passenger depot.

"In 1887, the *Chicago, Milwaukee & St. Paul Railway Company*, which in 1880 had succeeded to all the rights and franchises of the Mineral Point Railroad Company, put in a spur track, which started from the freight track at a point a little north of the passenger depot and crossed Commerce street, as originally laid out, *diagonally*, opposite the passenger and freight depots. This track was built for the accommodation of James' coal shed, which was erected about 100 feet southwest of the freight depot on the land of the railway company, under a lease from said company, and for the accommodation of J. D. Martin & Co., who had a lumber yard on the depot grounds of the railway company west of the line of Commerce street and south of said depot buildings. J. D. Martin & Co. had their lumber yard upon said grounds by permission of the railway company, but they had no written lease and paid no rent. All of the lumber sold at said lumber yard, and all of the coal sold at said coal shed, were shipped in over said railroad.

"The most of those who purchased lumber at said lumber yard traveled to and from said yard over what had been Commerce street and where said spur track crossed it, and the same was true, also, as to wagons going and coming from said coal shed. Nearly all of those who carried freight to or brought freight from said railroad depot and grounds also crossed said spur track at the place named. Besides those, for more than twenty years before the time when the

plaintiff was injured, there was considerable travel over the line of Commerce street west of said depot by farmers and others living south of the depot grounds or doing business south of them, and since 1883, when the Mineral Point Zinc Company's works were erected on the south of said depot grounds, large quantities of zinc ore have been hauled to said works over the place, on what had been Commerce street, where this spur track was. The traffic of all kinds, including that with the railway company, that passed over this place was quite large.

" Over this spur track, in the line of this street, where this traffic passed over the track, the defendant company made a crossing at the time the track was laid. At the place where the most of the teams crossed this track the crossing was made of three-inch oak planks that were ten or twelve feet long. From the end of this solid plankway there extended for some feet a crossing made by placing a three-inch oak plank on each side of the rail, with a filling of cinders within the track and between the planks, made as high as the top of the planks. Underneath the planks of the crossing were placed irons or strips of board to bring up the plank even with, or nearly even with, the top of the rails. This crossing had not been relaid since it was put in, although particular planks may have been taken out and replaced by others. The crossing had become worn at the time of the accident complained of. The plaintiff complains that, at the time, it was defective and insufficient by reason of the rails standing an improper distance above it.

" On January 10, 1893, the plaintiff had gone into the lumber yard of Martin & Co. for lumber, but not over the crossing in question. He had a bobsleigh with a wagon box on it. He purchased of Mr. Prideaux, one of the firm, about 200 feet of boards twelve feet in length, and these were placed in the wagon box. The ends of the boards at the front rested on the bottom of the wagon bed, with per-

McDermott vs. The Chicago, Milwaukee & St. Paul R. Co.

haps a little straw under the ends, and the other ends of the boards extended about two feet over the end gate of the box. At the front end of the boards the plaintiff threw some straw, something like an armful, which he had put in the box when he left home to sit upon. Then Mr. Prideaux sat on the boards and the plaintiff stood upon them to drive. He drove upon a jog trot out onto what had been Commerce street, and proceeded north upon it to the crossing over said spur track, and in going over the crossing the runner of the sleigh struck against the north rail, instead of rising over it, and slid along the rail, throwing the sleigh to one side, and pitching the plaintiff out. He struck the frozen ground upon his thigh, and was injured.

"The defendant company knew, for many years before the accident to the plaintiff, that this way west of the depot buildings, along what used to be Commerce street, had been used by the public as a thoroughfare, and that most of those who had dealing with said lumber merchants drove over this crossing, either in going to or coming from their lumber yard."

After stating to the jury that the foregoing facts were established by uncontradicted testimony, the circuit judge submitted to the jury questions for a special verdict,— five questions,— which questions, with the answers thereto, are as follows: "(1) Was the crossing made by the defendant company over the spur track, at the place where the plaintiff was thrown from his sleigh, at that time defective and insufficient by reason of the rails standing above the planks of the crossing? _A._ Yes. (2) Was the plaintiff, at the time he was thrown from his sleigh to the ground, exercising ordinary care in the manner in which he was driving his team over said crossing, and in standing upon the lumber in the sleigh box in driving the team? _A._ Yes. (3) If to the first question you have answered 'Yes,' answer this question: How high, at said crossing, when the plaintiff at-

·tempted to drive across it, were the top of the rails above the top of the planks of the crossing? *A.* One inch. (4) Was ·the plaintiff thrown from the sleigh by reason of the rail-·road crossing at that place being insufficient and unsafe? *A.* Yes. (5) If the plaintiff is entitled to judgment in this ·case, at what sum do you assess the damages which he is ·entitled to recover from the defendant? *A.* Three thousand ·dollars." Both parties moved for judgment upon the spe-·cial verdict, and the motion of the defendant was overruled, ·and that of the plaintiff granted; and from judgment for the plaintiff the defendant appealed.

For the appellant there was a brief by *John D. Wilson* and *C. H. Van Alstine*, of counsel, and oral argument by *Mr. Van Alstine*.

For the respondent there were briefs by *Spensley & Mc-Ilhon*, and oral argument by *Calvert Spensley*.

Winslow, J. The practice in this case is peculiar. At the close of the evidence the circuit judge prepared a special verdict. This so-called special verdict consisted of a long ·statement or recitation of facts (being the statement set forth ·at length in the statement of the case), all of which he states ·are established by uncontradicted testimony, followed by ·five questions for the jury to answer. The jury having an-·swered the questions, motions were made by both parties for judgment upon the special verdict. The motion of the plaintiff was granted, and that of the defendant denied, and judgment was rendered for the plaintiff. Thereupon the ·appellant prepared, and the judge has signed, a certificate reciting the motions for judgment on the verdict, and the rulings thereon, and the defendant's exceptions. The certificate then states that the "special verdict found by court ·and jury" covers and includes all the facts which the court deemed to be essential to the determination of the case, ·and that it was upon these facts, which the court found to

be sustained by the evidence, that the court overruled the defendant's motion for judgment and ordered judgment for the plaintiff. This certificate is called a bill of exceptions. As will be seen, it contains but one exception, and that is the exception to the overruling of the motion for judgment upon the verdict. Thus it will be seen that the evidence is not before us.

Indeed, it is a serious question whether anything is before us save the pleadings and the five questions and answers which properly constitute the verdict of the jury. The recitation of facts preceding the verdict is entirely anomalous. Certainly, the jury have not found these facts. But it may be that the statement in the bill of exceptions, that the court found the facts contained in the special verdict to be sustained by the evidence, should be held to apply to this recitation, thus bringing the case within the rule laid down in *Hart v. West Side R. Co.* 86 Wis. 483. However this may be, the parties have treated this recitation of facts as a part of the verdict, and as, in the view we take of the case, it makes no difference with the result, we shall also treat the statement as a part of the special verdict.

We then learn from the bill of exceptions that these were the facts which the circuit judge deemed essential to the case, and upon which he acted in ordering judgment; but we do not know, and cannot know, what other uncontradicted facts may have been established by the evidence, nor what bearing they may have been entitled to have upon the determination of the motions for judgment. In effect, there is nothing before us but the pleadings, verdict, motion for judgment, ruling and exception, and the judgment. In such case we must presume that every averment of the complaint not negatived by the verdict was proven upon the trial. *McHugh v. C. & N. W. R. Co.* 41 Wis. 75. Neither the statement of facts in the special verdict nor the certificate in the bill of exceptions negatives this presumption. When,

therefore, the appellant argues that the statement of facts shows that Commerce street had been vacated and consequently was not a highway, it is very easy to indulge the presumption that there was further uncontradicted evidence in the case showing that the street had been subsequently legally reopened or dedicated to the public use. Such presumption contradicts nothing contained in the verdict. When, also, it is argued that the railroad company had no notice of any defect in the crossing, it may be at once presumed that there was ample proof of such notice, as there is nothing to contradict this presumption in the verdict.

It is argued by the appellant that the only defect found by the jury is that the rail was an inch higher than the planks of the crossing, and that this court should declare, as matter of law, that this is not a defect. Probably there are many cases where a court would be entirely justified in so ruling, but in the present case not only do the jury find that the elevation of the rail an inch above the plank was a defect, but they find generally that the plaintiff was thrown from his sleigh by reason of the crossing being insufficient and unsafe, not specifying the particular insufficiency which caused the accident. Now, the complaint alleges a number of facts not controverted by the verdict, and which we must therefore presume to have been proven, tending to show that the crossing was defective. For instance, it is alleged that the track crossed the street obliquely at a very sharp curve, so that the top of one rail was two inches higher than the top of the other. Now, we are unable to say that the situation arising from a sharp curve and slant to the track as it crossed the highway might not be such as to make the question whether an elevation of the rail an inch above the crossing was negligence a proper one for the jury. Indulging the presumption which we must indulge in to support the verdict and judgment, we cannot say, as matter of law, that

there was no evidence tending to show negligence on the part of defendant.

It is argued that the evidence shows that the plaintiff was guilty of contributory negligence. We cannot so hold.

*By the Court.*— Judgment affirmed.