ALMA S. HESTER ET AL *v.* BAILEY COBB HESTER ET AL

[60 South. 6.]

1. DIVORCE. *Collateral attack. Decree.*

A bill in chancery by the first wife of a decedent and her daughter against the second wife of decedent and her children, in which the prayer of the bill is for a decree adjudging that the first wife and daughter are the owners of all the property of which the deceased died seised and possessed and praying for the cancellation of a deed made by decedent to his second wife, for a division of the estate and for an accounting, the suit being based upon the illegality of the divorce obtained by the decedent from his first wife, is a collateral attack upon such decree of divorce and is not maintainable.

2. DIVORCE. *Setting aside for illegality. Proof.*

The proof must be clear beyond question as to the illegality of a divorce and the second marriage, before the court would be justi-

fied in deciding that the first wife was still the legal wife and that the second marriage was void and the children of the second marriage bastards.

APPEAL from the chancery court of Sharkey county.

HON. E. N. THOMAS, Chancellor.

Suit by Alma S. Hester and others against Bailey Cobb Hester and others. From a decree sustaining a demurrer to the bill and rendering a final decree for defendant, complainant's appeal.

The facts are fully stated in the opinion of the court.

*W. H. Clifton*, for appellants.

A collateral attack by a surviving party on a decree of divorce, after death of party obtaining divorce, may be made for want of jurisdiction over the parties or for fraud. *Lawrence* v. *Nelson*, 57 L. R. A. 583, 586, 594, 596, 598-9; 14 Cyc. 722E, 655, 657D, 659D; *Cheely* v. *Clayton*, 28 L. Ed. 298, 110 U. S. 701; *Fernwood Lumber Co.* v. *Lumber Co.*, 85 Miss. 54, 37 So. 502; *Moore* v. *Somerville*, 80 Miss. 323, 32 So. 249; *Duke* v. *State*, 57 Miss. 229; *Plummer* v. *Plummer*, 37 Miss. 185, 199; *Richardson* v. *Brooks*, 52 Miss. 125.

The action of divorce is *inter* parties and contracts of marriage cannot be dissolved or annulled any more than other contracts, except by the court obtaining jurisdiction of the person. The marriage relation is not a *res*, within the state where the jurisdiction of the court is invoked. Nor can the marital status be changed or dissolved by estoppel. *Haddock* v. *Haddock*, 201 U. S. ——; *Woodson* v. *K. of H.*, 97 Miss. 210, 216; *Suter* v. *Suter*, 72 Miss. 345.

The averment of the bill which was admitted by the demurrer show that the court was imposed upon by Charles O. Hester in that his wife Alma was sent out of the state by him to Cainall, Oklahoma, for the purpose of obtaining a divorce, which being true did not make her a nonresident.

2nd.   Because when the suit was filed the defendant in the divorce suit, complainant here, though actually residing in Oklahoma, then Indian Territory, had been sent out of the state by fraud of her husband for the purpose of obtaining a divorce; and his domicile in Monroe county was her domicile, and failure to obtain personal service on defendant while here in Mississippi was fraud on the jurisdiction of the court which makes the decree void.   14 Cyc. 718, 613, 819; *Suter* v. *Suter*, 72 Miss. 345, 16 So. 673; *Haddock* v. *Haddock*, 50 L. Ed. 875; *Andrews* v. *Andrews*, 47 Miss. 372; *Bell* v. *Bell*, 45 Miss. 804; *Streitwalf*, 45 Miss. 810; *Atherton* v. *Atherton*, 45 Miss. 794, 804.

The jurisdiction of the court can always be inquired into when its judgments and decrees are attacked.   And the precise question here is "whether the wife Alma was justified by the fault of the husband in leaving him in Mississippi?"   The case on this question is determinable on the facts existing at the time of the filing of the bill and entering of the decree.   The averments of the bill which are admitted by the demurrer show that the court was imposed on by Charles O. Hester, in that his wife, Alma, was sent out of the state by him to Cainall, Oklahoma, for the purpose of obtaining a divorce, which being true did not make her a nonresident.   On the contrary the domicile of her husband fixed her domicile here in Monroe county, Miss., and the court could have obtained jurisdiction over her person only by personal service of process.

The principle upon which the case of *Suter* v. *Suter*, 72 Miss. 345, was determined applies in full vigor to this case.

The cases cited *supra* from the United States Supreme Court apply the same salutary principle.   The fact that these cases were decided under the full faith and credit clause of the Federal Constitution does not make them any less an authority applicable to and governing the instant case.

On the contrary the domicile of her husband fixed her domicile here in Monroe county, Miss, and the court would have obtained jurisdiction over her person only by personal service · of · process. And the decree, being obtained on a false charge and by perjured testimony, was a fraud on the court.

In *Suter* v. *Suter*, *supra*, our own court said it was a fraud upon the jurisdiction of the court for the wife to file a bill for divorce and alimony alleging the husband's residence to be New Orleans, La., when she failed to show "reasonable grounds why she should not return to her husband's home and hers." It is true that there was a direct proceeding on appeal from a decree granting the relief asked; but it being a question of jurisdiction, the facts on which the jurisdiction of the court depended can be shown in a collateral proceeding, as the state and the United States authorities cited in this brief abundantly show.

*McLaurin & Thames*, for appellees.

The original bill was filed October 10, 1910, fifteen and one-half years after the appellant had notice of the divorce decree. This is a full and complete estoppel. *Woodson* v. *Colored Grand Lodge of Knights of Honor of America*, 97 Miss. 210, 52 So. 457, is conclusive of the case. It is there said by MAYES, C. J., speaking for a unanimous court, between two periods, "On principal, we do not know of any reason why the rules of estoppel should not be applied as strictly to the facts of this case as any other civil contest."

The amended bill which contradicts the sworn allegations of the original bill admits that the appellant heard in one year after she left Mississippi that C. O. Hester was married. She lay idle fifteen and a half years, until five children were born and property accumulated, and also until C. O. Hester was dead, and then turns up with this suit. No court of conscience in the world will per-

mit this. The court having decided that the law of estoppel will apply in cases of this kind, as well as civil suits of other kinds, we call attention to the fact that all the authorities are in accord on the proposition that appellant has not shown diligence.

In *Foster* v. *Mansfield, Coldwater, etc., Railroad Company,* 146 U. S. 199, the court used this language. "The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath and hard to disprove; and hence the tendency of courts of recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

Appellant by the original bill (sworn to) heard of the divorce decree fifteen and a half years before the suit was filed and by the amended bill heard of the marriage a much longer time.

In *Coleman* v. *First National Bank of Decatur,* 22 So. (Ala.) 84, quoting from its own decisions and 2 Pom. Eq. Jur., sec. 865, lays down the law decisively against appellant.

By the original bill (sworn to) she knew of the divorce and decree. By the amended bill she knew of the marriage. She slumbered on her rights fifteen and one-half years and then waited until C. O. Hester was dead and could not defend himself and wife and children and till after he and she had worked hard and accumulated something, and then came to a court of equity to make a pauper out of the appellee and bastards out of her innocent and helpless children.

In *Manning et al.* v. *Pippin et al.,* decided by the Supreme Court of Alabama, April 26, 1892 and reported in 11 So. 56, this language was used by the court: "In *James* v. *James,* 55 Ala. 534, it was said by this court: 'By no mere general averment of ignorance can a party

account for long delay and acquiescence. By distinct averments he must show why he was so long ignorant, and acquit himself of all the knowledge of the facts which would put him on inquiry. He must show how and when he first came to the knowledge of the facts, or the court may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.''

Independently of circumstances, equity usually adopts as a bar to the assertion of such trust the period which bars a title at law. Six authorities cited.

Its meaning. Equity aids the vigilant, not those who slumber on their rights. The principle embodied in this maxim operates through its entire remedial portion of equity jurisdiction. Its application and effects have been stated by an eminent English chancellor as follows: ''A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept upon its rights acquired for a great length of time. Nothing can call forth this court into activity but consicience, good faith, and reasonable diligence. In early times limitations were confined to law. However, courts of equity, proceeding on the analogy of these statutes, applied the law period.'' Pom. Eq. Jur. (2 Ed.) 418-419.

In 2 Nelson on Divorce and Separation, p. 1008, it is held that courts have a right to protect themselves from fraud. But, said this eminent author, ''If an innocent party has married one of the divorced parties, the court refuses application if the motive is to obtain alimony or some pecuniary advantage.''

Appellant has not shown in the original bill the amendment to the bill, or the amended bill, or attempted to show any reason whatever for this long delay.

When she heard of the divorce decree in the original bill, and the marriage in the amended bill, she was then put on notice and having held her peace for all' these fifteen and one-half years, she is forever estopped.

Appellant knew of the decree of divorce by the original bill (sworn to) and by the amended bill she knew of the marriage one year after the decree was granted. She had two years in this to appeal. See annotated Code 1892, section 3112. That gave her one year after she had knowledge in which to appeal.

Collateral attack will not lie. Her time for all appeal had not expired. See 93 Fed. 49, and the many cases there cited from the state courts and the court of appeals, and U. S. Supreme Court.

In *McNeil* v. *McNeil*, 78 Fed. 834, it is held that eighteen months is too late to file a bill to set aside a decree of divorce. It is laches and bars the action. This court emphasizes the fact that in suits to set aside a divorce decree the complainant should not be negligent.

At page 836 the court said, "A judgment of divorce, more than a judgment of any other kind, would seem from its great effects to claim from a party affected as well as from the insistence of the law, an immediate attention." If a second marriage has taken place after an unreasonable delay of the defrauded party, she has lost her rights by laches and cannot disturb the decree upon which others have relied. Public policy forbids the review of decrees of divorce under such circumstances." 2 Nelson on Divorce and Separation, p. 1019.

Summing up this phase of the case, we see that from the amended bill, which flatly contradicts the sworn allegations of the original bill that appellant heard one year after she left Mississippi, that C. O. Hester had married appellee. It is true that this second marriage did not take place as early as she alleges, but it shows that she was put on notice in plenty of time to have even prevented the second marriage.

Still she lies low like "Brer Rabbit" till after large property has been accumulated and five children brought into the world, and then comes to a court, a court of conscience, mind you, and asks for relief. To get this

relief she is willing to bastardize the children, and turn them out, not only without means of support, but without a good name. "He who steals my purse, etc."

In *Nicholson* v. *Nicholson*, —— N. E. (Ind.) 225, the law is laid down with great force, that public policy requires diligence on the part of those who seek to set aside divorce decrees. That was a case where only four years lapsed. We objected to the filing of the amended bill. Our reasons are in the record, and in our opinion are cogent and sufficient. An amendment to the original bill has been filed. The original bill was sworn to. The amended bill flatly contradicted the original bill without giving any explanations.

The amended bill avers that through her attorneys complainant had the record of Itawamba and other counties examined and found no record of the marriage license from the circuit clerk of Itawamba county. This is a flat contradiction of the record.

All this ought, it seems to us, to convince this court that the whole scheme is without equity and good conscience. Both of these, with diligence added, are essential to the invoking the aid of the court of equity.

*May & Sanders*, for appelleess.

If the divorce decree rendered by the chancery court in February 1894, dissolving and annulling the marriage of Charles O. Hester to Alma S. Hester, is not open to attack by this collateral prodeecing, then all questions presented by this appeal become unimportant and immaterial. For the convenience of the court we again quote the language of the divorce decree.

"DECREE—CHANCERY COURTS, FEB'Y. TERM, 1894.

"State of Mississippi,

"County of Monroe.

"*C. O. Hester* v. *Alma Hester.*

This day this cause comes on for hearing, it appearing the defendant is legally in court, and it further appear-

ing from the evidence adduced in open court that the complainant is entitled to the relief prayed for, it is adjudged and decreed that the prayer of the bill be granted and that the bonds of matrimony existing between complainant and defendant be and the same are hereby dissolved and declared null and void. That complainant pay the cost.

Adjudged and decreed this the 7th day of March, 1894.
　　　"Baxter McFarland, Chancellor, etc."

We maintain that the decisions of the supreme court of our state make it clear that said divorce decree is not open to the attack made by this proceeding.

In the case of *Cannon, Admr., etc.*, v. *Cooper et al, Admr., etc.*, 39 Miss. 784, our court, speaking through HARDY, J., on pages 788 and 789 quotes a decree of the lower court and discusses its verity as follows:

" 'And it appearing to the satisfaction of the court that the cause had been duly and properly revived on the motion of said plaintiff against said Eliza J. Martin and Timothy T. Cooper, administrators, etc., of John Martin, deceased, in the high court of errors and appeals and by the order thereof, and that said administrators had thereby due notice of the pending of this cause in said circuit court; it was therefore ordered that the cause be revived in said circuit court against them; and as they had filed no new plea to the action, that it should stand for trial on the issue thereto filed,' etc. The cause was then tried and judgment on verdict was rendered for the plaintiff.

"The defendants objected to the introduction of this transcript, because, first, the transcript showed no revival of the action against them in the circuit court, nor notice to them of its pendency; second, it did not show any such revival or notice in the high court of errors and appeals. This objection was sustained and the transcript excluded, and judgment was thereupon rendered for the defendants on the plea of *nul tiel* record.

"It will be observed that the transcript positively shows that it appeared to the satisfaction of the court that the suit had been duly revived in this court, against these administrators. It does not state the evidence by which the recited fact was made to appear to the court. Now was it necessary that it should do so. The evidence upon which orders and judgments of the courts of general jurisdiction are founded is not necessarily a part of the record, nor required to be shown by it. The presumption of the law is, that such judgments are founded on proper and sufficient evidence; and in the absence of the statement of the evidence, if it appear that the fact in question was adjudicated upon evidence deemed sufficient by the court, upon well-settled principles, the judgment cannot be collaterally impeached, however, insufficient the evidence may have been in fact. *Cason v. Cason*, 31 Miss. 578."

Again in the case of *Pollock, Admr.*, v. *Buie, et al.*, 43 Miss. 140, the court, in an opinion delivered by Chief Justice PEYTON on page 150, used this language:

"With respect to the first question, the record shows a waiver of notice by citation and consent that the account of said executors may pass to a final hearing on the part of all the legatess and devisees of the testator, except Dorothy V. McCall, upon whom citation had been executed by the sheriff on the 18th day of September, A. D. 1865. And the decree recites that all the legatees and devisees had due and legal notice of the pendency of the account, and waived citation, and that all the said legatees and devisees were of full and lawful age, except Dorothy V. McCall, who was a minor without legal guardian, for whom the court appointed a guardian *ad litem*, who being in court, accepted the trust and waived notice and citation, and consented that said account might then be examined and audited. We think, upon principle and authority, these waivers in the record and recitals in the decree are sufficient evi-

dence of notice to the parties interested of the pendency
of the account, and of the time and place of the final
settlement thereof, to sustain the decree made by the
court on said settlement.  For it has been repeatedly
determined by our predecessors that the court of pro-
bates, as to the jurisdiction conferred by the Constitu-
tion is a court of original and general jurisdiction, and
that every presumption is to be indulged in favor of the
correctness of the facts on which its decree is founded,
and which appear of record.  *Root* v. *McFerrin*, 37 Miss.
17; *Hardy* v. *Gholson*, 26 Miss. 70; *and Duncan* v. *Mc-
Whorter*, 40 Miss. 231.  The evidence upon which the
orders and judgments of courts of general jurisdiction
are founded is not necessarily a part of the record, nor
required to be shown by it. ' The presumption of law is
that such judgments are founded upon proper and suffi-
cient evidence and cannot be collaterally impeached,
however insufficient the evidence may have been in fact.
*Cason* v. *Cason*, 31 Miss. 578, and *Cannon* v. *Cooper,*
39 Miss. 784-789.''  *Cocks* v. *Simmons*, 57 Miss. 183;
*Sadler* v. *Prairie*, 59 Miss. 572; *Allen* v. *Dicken*, 63 Miss.
91; *Ames* v. *Williams*, 72 Miss. 760; *Gillespie* v. *Hauen-
stein*, 72 Miss. 838; *Vicksburg Grocery Co.* v. *Brennan*,
20 So. (Miss. 1896); *Railway* v. *Thomas*, 86 Miss. 27;
*Sweatman* v. *Dean*, 86 Miss 647.

We have thus seen by the long line of decisions of our
supreme court that the adjudication of the chancellor
of the facts showing that Alma S. Hester, the defendant
in the divorce suit, (appellant here) was ''legally in
court,'' cannot be impeached collaterally.  The con-
clusive presumption that Alma S. Hester, the defendant
in the divorce suit, was ''legally in court'' at the trial
of said suit, destroys the contention of counsel that the
decree was, and is, void because procured through fraud,
for the reason that the only allegations of fraud are,
that the complainant, Charles O. Hester, fraudulently
caused his wife to remove from the state of Mississippi

to the Indian Territory for the fraudulent purpose of securing a divorce upon false grounds to be established by perjured testimony. If the defendant was "legally in court," the circumstances of her removal to the Indian Territory are necessarily irrelevant and immaterial, because she was "legally in court" to defend the suit upon its merits, and being "legally in court" she either waived her right to defend herself against the alleged false accusations contained in the divorce bill, or she was unable to convince the chancellor that the accusations constituting the grounds for divorce were false; and in either case, if she felt aggrieved by the chancellor's decision, her redress was, as stated in the *Thomas case, supra,* "by direct proceedings in the court which tried the cause or by appeal to a higher court."

Argued orally by *Geo. W. May,* for appellees.

Reed, J., delivered the opinion of the court.

Alma Sargeant Hester and her daughter, Oma Hester Smith, on October 12, 1910, filed their original bill in the chancery court of Sharkey county, seeking to recover from appellees, Bailey Cobb Hester and her children, certain real and personal property which had been owned by Charles O. Hester, deceased. The original bill was amended by leave of court, and afterwards an amended bill was filed.

It appears that Charles O. Hester on May 8, 1892, was legally married to Alma Sargeant Hester in Monroe county, Miss. On July 15, 1892, the daughter Oma Hester was born. The bill alleges that said Charles O. Hester took his wife and her child to the home of her father, Blufford Sargeant, and deserted her; that in October, 1893, Blufford Sargeant and his family removed to Oklahoma. On February 1, 1894, Charles O. Hester filed a bill for divorce against his wife, Alma Hester. The decree of divorce was rendered on March 7th, 1894.

All the papers in the case were lost, and the files show only the jacket, which contained no papers. The following is a copy from the general chancery docket: "General Chancery Docket No. 3. No. 2846. *C. O. Hester* v. *Alma Hester.* Geo. C. Paine, Atty. Feb.1—94, Bill filed; Feb. 2, Affidavit filed and publication made to defendant at Cavanell, I. T. Copy of publication mailed to defendant. M. 7, Decree of divorce 339. *C. O. Hester* v. *Alma Hester.* February term 1894. The clerk will set this cause down for hearing on bill, proof of publication, and proof. Geo. C. Paine, Sol." The minutes of the court show the following decree: "This day this cause came on for hearing, it appearing the defendant is legally in court, and, it further appearing from the evidence adduced in open court that the complainant is entitled to the relief prayed for, it is adjudged and decreed that the prayer of the bill be granted, and that the bonds of matrimony existing between complainant and defendant be and the same are hereby dissolved, and declared null and void. That complainant pay the cost."

On the 10th day of June, 1895, Charles O. Hester married Miss Bailey Cobb. It is alleged in the bill that the publication of notice to the nonresident defendant, Alma S. Hester, was made in the Aberdeen Weekly, a newspaper published in Monroe county, and that the first publication was made on February 6, 1894, and therefore the publicaton only extended for nineteen days, and was not a sufficient notice under the law to the defendant. It will be seen that the entries on the general chancery docket show that the publication was made on February 2, 1894, and on that day a copy of the same was mailed to the defendant at Cavanell, I. T. The decree recites that the defendant was legally in court at the hearing of the case. The clerk of the chancery court in his certificate states that the file of the Aberdeen Weekly during February, 1894, had been lost. The

appellants also allege in their amended bill that the decree of divorce had been obtained through false and perjured testimony, and claim that the divorce was null and void. In the original bill it was shown that appellant Alma S. Hester had knowledge of the divorce and the marriage to appellee Bailey Cobb Hester in one or more years after the happening of the events. The amended bill states that it was one or more years after she left Mississippi before she heard of the marriage to Bailey Cobb Hester, and that she did not know of the divorce until after the death of Charles O. Hester. It appears that several children were born to Charles O. Hester and Bailey Cobb Hester, and that he moved to Sharkey county, and there accumulated property, including the plantation which he afterwards conveyed to his wife, Bailey Cobb Hester.

Appellees demurred to the bill of complaint, and therein set up as one ground of defense that the appellant Alma S. Hester should not be permitted after the lapse of so many years to claim that the divorce from her and the marriage by Charles O. Hester to Bailey Cobb Hester were illegal, and that she should be estopped by reason of her laches. Another defense presented is that the decree of divorce in this case cannot be collaterally attacked.

We will first consider the defense that this suit is a collateral attack upon the decree of divorce. It seems clear that the proceeding before us is a collateral attack. The attack is not made in the action wherein the decree was rendered, nor in an appeal from the action of the court in granting such decree; nor is it a proper suit brought for the sole purpose of declaring such decree void. The prayer in the amended bill is that appellants may "be decreed to be the owners of all the property described in the bill of which Charles O. Hester died seised and possessed." It also asks for cancellation of the deed from Hester to his wife, Bailey Cobb Hester,

and it prays for a division of his estate, for an accounting of the revenues from the estate, for preservation of the funds and property, and for general relief. It will be noted, therefore, that the bill was not a direct, but only a collateral, attack upon the divorce proceedings and decree.

It appears well settled in this state that a decree like the one before us cannot be attacked by collateral proceedings. The entries on the record show, that all the proceedings were regular, and that the defendant was properly in court, and that the case was duly heard in open court upon evidence, and that such evidence was sufficient to entitle the relief prayed for. Therefore the divorce was granted. All proceedings were adjudged by the court to be sufficient.

In the case of *Cocks* v. *Simmons*, 57 Miss. 183, wherein it was contended that a minor was not properly brought into court by reason of the failure to summon his guardian, the summons being served on a person who was not, in fact, the guardian, George, C. J., said: "The court, however, in the order appointing a guardian *ad litem* for these minors makes this recital: 'It appearing to the satisfaction of the court that subpoena or summons has been duly executed upon the minor defendants in this cause.' . . . Here is a distinct and unequivocal adjudication, made by the court, as to a matter upon which it was bound to make an examination and decision, as a prerequisite to the order which it was then about to make. Unless the court was satisfied that process had been duly served on the defendants, it was bound not to make an order appointing the guardian *ad litem*, and it was bound also to arrest the proceedings in the cause until such process was served. Under such circumstances, the recital in the order must be held to be the solemn ajudication of the court that process had been duly served. . . . It is well settled that in collateral proceedings such a decision is conclusive of the

jurisdiction of the court. Whether the court had the proper evidence before it on which to base such a decision cannot be inquired into collaterally, for that would be a question of error or no error, which manifestly can be entertained only in a court sitting to review the proceedings. This rule is absolutely essential, in order that faith and credit may be accorded by the community to the decrees and judgments of courts of record; and that parties acting in obedience to them, or acquiring rights under them, may have the confidence and repose flowing from a conviction that the solemn judgments and decisions of the higher courts, so long as they remain unreversed, will not be disregarded. It is attempted to weaken the force of this position by the suggestion that no man should be bound by a judgment of which he had no notice, and therefore no opportunity of resisting; and that, if he were denied the opportunity of showing that he had no notice by a decision made in his absence, that would be confessedly binding him, as to that decision, without notice. But it may be replied that all proceedings in courts of justice are based upon the confidence that the officers of the law, the clerks and sheriffs as well as the judges, will do their duty, and in all their official acts conform to truth and justice." The case of *Railway Co.* v. *Thomas,* 86 Miss. 27, 38 South. 770, in which certain proceedings in the federal court for foreclosure of a trust deed were attacked collaterally, and and in which it was contended that there was not a sufficient publication of notice, the court, speaking through WILLIAMSON, Special Judge, said: "The defects charged in the bill of complaint against the records in the federal court cases amount to irregularities only in the course of judicial proceedings, and do not render the proceedings void nor the decree open to collateral attack. Irregularities in permitting amendments to the bill for the purpose of bringing in other parties, and the ordering of publication without formal affidavit, and the insufficiency of publication, as charged in complainant's bill, must

be remedied by direct proceedings in the court which tried the cause or by appeal to a higher court. The record shows there was some notice to the third bondholders, but charges it was not sufficient, because published for four weeks only. This is a collateral attack for irregularity, and cannot be permitted."

As we hold that the appeal in this case collaterally attacks the divorce proceedings, and that such collateral attack cannot be made, it is unnecessary for us to decide the contention that appellant Alma S. Hester should be estopped by reason of her long acquiscence in the matter and her failure to make any effort to set aside the divorce. From the record it seems that a divorce was regularly obtained, that Hester remarried, and that he has since reared a family of children.

A setting aside of the divorce at this time would render his second marriage and his living with his second wife illegal, and a violation of the laws of the land, and would render illegitimate the children born of the second marriage. We must consider that these children are innocent, and that it is the policy of the law, as far as possible, to preserve a status that would keep these children as the legitimate offspring from a legal marriage. Therefore the proof of the illegality of the divorce and of the second marriage should be clear and sufficient beyond question before the court would be justified in deciding that appellant Alma S. Hester was still the legal wife of Charles O. Hester when he died, and that his only legal child is her daughter, Oma Hester Smith. Her failure for the long number of years to assert any rights as the lawful wife of Charles O. Hester and to make any active opposition to the validity of the divorce and his remarriage demonstrates the wisdom of the doctrine announced in the foregoing cited cases relative to collateral attack.

The chancellor was correct in sustaining the demurrer and rendering his final decree in this case.

*Affirmed.*