Davis (Lois), Plaintiff and Respondent, vs. Davis (Vincent), Defendant: Davis (Lillian), Interpleaded Defendant and Appellant.

*January 10—April 3, 1951.*

For the appellant there was a brief by *Douglas & Omernik* of Spooner, and oral argument by *E. E. Omernik.*

For the respondent there was a brief by *G. Arthur Johnson* and *Mark H. Makholm,* both of Ashland, and oral argument by *Mr. Makholm.*

BROWN, J.    Appellant presents no bill of exceptions and in the absence of one this court is limited to ascertaining whether the judgment is sustained by the pleadings and by the findings. (*Parke, Austin & Lipscomb, Inc., v. Sexauer* (1931), 204 Wis. 415, 235 N. W. 785; *Edleman v. Kidd* (1885), 65 Wis. 18, 26 N. W. 116; *McDermott v. Chicago, M. & St. P. R. Co.* (1895), 91 Wis. 38, 64 N. W. 430.)

A court has no jurisdiction to grant a divorce unless at least one of the parties to the marriage has a *bona fide* domicile in the state where the court sits. Restatement, Conflict of Laws, p. 168, sec. 111. It is not contended that Mrs. Lois Davis ever had a Wyoming domicile. The Wisconsin trial court determined that Mr. Davis had no Wyoming domicile and that the Wyoming court was without jurisdic-

tion in the divorce action for that reason. Its findings, material to this issue, are as follows:

"3. That during the fall of 1947 the defendant commenced an action of divorce in the circuit court for Sawyer county, state of Wisconsin, which action was contested by the plaintiff herein and abandoned and dismissed on application of the defendant herein on the 13th day of February, 1948.

"4. That on the 15th day of February, 1948, the defendant sojourned to the village of Greybull, county of Big Horn, state of Wyoming, and after being in said locality for a period of approximately sixty days the defendant, Vincent P. Davis, applied to the district court of Big Horn county, state of Wyoming, for a divorce, and on the 8th day of July, 1948, a purported decree of divorce was entered by said court granting a divorce to the said defendant; that within a period of approximately one month after such purported divorce, the defendant returned to the city of Hayward, Sawyer county, state of Wisconsin, where he continued his practice of law, and in the fall of 1948, the defendant married the interpleaded defendant, Lillian Davis, in the state of Illinois, and in the spring of 1949, she took up her residence with the defendant at the city of Hayward, Wisconsin, and the defendant and the interpleaded defendant continued their residence in the city of Hayward, Sawyer county, state of Wisconsin, up until the time of the trial of this action; that the defendant, Vincent P. Davis, has at all times indicated his place of residence as being in the state of Wisconsin, by, among other things, filing his income tax in the state of Wisconsin, by commencing in the fall of 1947 and carrying on thereafter the development of a cranberry marsh near the said city of Hayward, declaring the intention of developing such marsh, and by acting as assistant district attorney of said county of Sawyer."

The court's finding of ultimate fact and its conclusion of law that both parties at all times were residents of Wisconsin and its judgment that the Wyoming divorce was void for lack of jurisdiction are amply supported by these findings which stand as verities in the absence of a bill of exceptions, but we must still deal with the question of whether the Wisconsin courts are not compelled to accord full faith and

credit to the Wyoming decree notwithstanding such findings and notwithstanding sec. 247.21, Stats., whose material part reads:

"Full faith and credit shall be given in all the courts of this state to a decree of . . . divorce by a court of competent jurisdiction in another state, . . . provided, that if any inhabitant of this state go into another state, . . . for the purpose of obtaining a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state."

Appellant submits that when the Wyoming court decided that it had jurisdiction (as it must be presumed to have done by proceeding with the cause, 21 C. J. S., Courts, p. 174, sec. 113) and entered its decree of divorce, that decree must be accorded full faith and credit in Wisconsin and elsewhere because of the provisions of the United States constitution and statutes which read as follows:

Sec. 1, art. IV, U. S. Const.:

"Section 1. Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

28 U. S. Code, sec. 1738:

"Such acts, records, and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state, territory, or possession from which they are taken."

For many years it was generally held, and the supreme court of the United States concurred, that the foregoing constitutional and statutory provisions did not prevent the courts of the state where the parties actually resided from deciding whether at least one of the parties had acquired a domicile

in the state of the forum and, if not, such court was at liberty to refuse recognition to the divorce. The right of the state of true residence to control the domestic relations of its own inhabitants was considered to take precedence over any attempt by another state to interfere with it. The home state's interest in the continuity of the marriage was held to be such that the husband and wife together, to say nothing of one of them alone, could not go to another state and there, by false representations of domicile, procure a decree which their own state was compelled to accept. The law, as then accepted, was expressed in the annotation dealing with this subject in 39 A. L. R. 677 (1925), thus:

". . . it is established by the great weight of authority that, notwithstanding the full-faith-and-credit provision of the federal constitution, a decree of divorce rendered in one state may be impeached and denied recognition in another upon the ground that neither of the parties had such domicile or residence at the divorce forum; and this, notwithstanding the recitals in the decree or record from the other state of the jurisdictional fact of domicile or residence." (Authorities cited.)

This principle was severely shaken in 1938 when in the case of *Davis v. Davis* (1938), 305 U. S. 32, 59 Sup. Ct. 3, 83 L. Ed. 26, the supreme court held that where the defendant appeared in the divorce action and actually contested the issue of the plaintiff's domicile the adjudication thereof by the trial court was conclusive and binding in all other states. This has been followed by other decisions, notably, *Sherrer v. Sherrer* (1948), 334 U. S. 343, 68 Sup. Ct. 1087, 1097, 92 L. Ed. 1429, *Coe v. Coe* (1948), 334 U. S. 378, 68 Sup. Ct. 1094, 1097, 92 L. Ed. 1451, and *Johnson v. Muelberger* (1951), 340 U. S. 581, 71 Sup. Ct. 474, 95 L. Ed. 635, where the defendant participated in the proceedings but did not raise the issue of domicile, the supreme court holding that the defendant could not thereafter raise that issue in another court and is concluded by the decree. The court still holds, however, that where the defendant is not served with process

in the state of the forum and takes no part whatever in the proceedings, he or she is not concluded by the judgment and the state where the parties admittedly resided up to the time of the divorce is not required to extend faith and credit to the judgment under such circumstances. *Rice v. Rice* (1949), 336 U. S. 674, 69 Sup. Ct. 751, 93 L. Ed. 957.

There appears to be some inconsistency here in that all of the foregoing decrees accord with the law of the forum and are valid in the states where they were granted, yet not all are protected by the full-faith-and-credit clause. Nevertheless, the decisions show that the right of the home state to be considered is not completely gone. Just where the line is to be drawn is not yet certain. In the *Sherrer* and *Coe Cases, supra,* both parties to each action were physically present and participated in the divorce proceedings. In such cases it is clear that the decree is conclusive. In the *Rice Case, supra,* the defendant was not served in the jurisdiction and did not appear. It is clear that a decree in such a case may be repudiated by the state of actual domicile. But where the defendant was not served within the territorial jurisdiction of the forum, did not attend personally, and took no part in the proceedings except to enter a formal special appearance by counsel objecting to jurisdiction because plaintiff lacked domicile, the status of the decree has not been passed upon. It was conceded on argument, and the record does not dispute it, that Mrs. Lois Davis or her attorney did no more. The latest indication which we have found of the supreme court's view of such a situation is in *Johnson v. Muelberger, supra,* decided March 12, 1951. There, after summarizing its recent decisions, the court said:

"It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree."

We know "general" and "special" appearances but we have little help from the books in construing "personal appearance." We conclude that the court means that the party came into court in his or her own person, as the party had done in the *Sherrer* and *Coe Cases,* which the court had just referred to. Mrs. Lois Davis did not thus "personally" appear.

Under these circumstances we do not consider that the federal constitution nor the decisions interpreting it have called upon Wisconsin to surrender to the courts of another state this remnant of its historic right to determine for itself the marital status of its own residents, and we shall not surrender it until higher authority, speaking on the instant facts or on others which are indistinguishable, requires us to do so.

*By the Court.*—Judgment affirmed.