192 So.2d 356

Katherine G. BOUDREAUX

v.

Carl K. WELCH et al.

No. 48042.

Nov. 7, 1966.

Dissenting Opinion Nov. 30, 1966.

Rehearing Denied Dec. 12, 1966.

Aycock, Horne, Caldwell & Coleman, Jack C. Caldwell, Franklin, for plaintiff-applicant.

Caffery, Duhe & Davis, John M. Duhe, Jr., New Iberia, for defendants-respondents.

McCALEB, Justice.

The question for decision in this case is whether or not the Full Faith and Credit Clause of the United States Constitution [1] precludes the courts of this State from entertaining a collateral attack on a judgment of divorce rendered in the State of Mississippi when the validity of such judgment could not be challenged in the courts of that State?

The issue arises in a tort action by the alleged surviving widow of Carroll J. Boudreaux to recover damages for his wrongful death as a consequence of a vehicular collision with a truck operated by Carl K. Welch. Named as defendants, in addition to Welch, are GWECO, Inc. (employer of Welch) and American Employers Insurance Company (his liability insurance carrier).

As a defense to the suit, raised by way of a motion for a summary judgment, defendants contend that Mrs. Boudreaux is not the surviving spouse of the decedent within the intendment of our wrongful death statute, Article 2315 of the Civil Code, because she was never legally divorced from the first husband, Owen J. Mire. Defendants attached to their motion, among other exhibits, a certified copy of a judgment of the Harrison County Chancery Court of the State of Mississippi dated September 22, 1950, valid on its face, which purports to divorce plaintiff from Mire. This decree is assailed by defendants as absolutely null, it being alleged that neither party was ever domiciled in Mississippi and, therefore, the Court was without jurisdiction. In support of this claim, defendants adduced the following undisputed evidence:

Plaintiff was legally married to Owen J. Mire on August 22, 1924 and the parties lived together in this State until the latter part of 1947, when they separated. At that time they were living in Patterson, St. Mary Parish. Thereafter, plaintiff continued to live in the house where the parties had resided previously and she was living there on August 16, 1950 when she filed suit in the Chancery Court, Harrison

1. U.S.Const. Art. 4, Section 1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

County, Mississippi seeking a divorce from Mire. Plaintiff actually never resided in the State of Mississippi but visited there for a few days to testify in the divorce proceedings. On August 29, 1950 Mire executed a waiver of service and entry of appearance, conformably with Chapter 244, Mississippi Laws of 1936, which stated:

"I, the undersigned, Owen J. Mire, being advised that my wife, Katherine G. Mire, has filed a suit in the Chancery Court of Harrison County, Mississippi against me for a divorce, do hereby waive the service of process on me and do enter my appearance in said cause and consent that the same may be tried at the September, 1950 term of said court or at any succeeding term thereof."

This document was filed in the divorce proceedings, and, on September 22, 1950, a final decree of divorce was rendered by the Chancery Court. Plaintiff subsequently married the decedent, Boudreaux, in December, 1950.

Defendants contend they are entitled to collaterally attack the Mississippi divorce decree on jurisdictional grounds under our holdings in Navarette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946) and Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955) inasmuch as plaintiff, in her deposition taken on the motion for summary judgment, admitted that she was never a resident of Mississippi but had gone there for a few days only to testify in the divorce proceed-

ings. Defense counsel further argue that, under the rulings of the Supreme Court of the United States in the two cases of Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273 (1942) and 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366 (1945) the issue of jurisdiction of the court that rendered the decree can always be the subject of judicial inquiry by the court of another jurisdiction and, when, as here, it has been established that Mississippi lacked jurisdiction over the subject matter because of non-residence of both parties, the decree of divorce is void ab initio and not entitled to Full Faith and Credit.

Plaintiff, on the other hand, declares that the judicial pronouncements cited in support of Navarette v. Laughlin have been markedly altered by later jurisprudence and that the instant case is distinguishable from Eaton v. Eaton. She asserts that the situation here is identical in principle with Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951) and, therefore, the Mississippi decree is not subject to collateral attack. Plaintiff's position is that the divorce decree, being valid under Mississippi law and invulnerable to collateral attack in that State by reason of the personal appearance of Mire in accordance with the laws of Mississippi, is entitled to the complete protection of the Full Faith and Credit Clause under the rulings (in addition to Johnson v. Muelberger) in Sher-

rer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355 (1948); Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451, 1 A.L.R.2d 1376 (1948) and Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951).

The district judge sustained the motion for summary judgment and dismissed the suit. The Court of Appeal (First Circuit) affirmed. See Boudreaux v. Welch, 180 So.2d 725. On plaintiff's application we granted a writ of review.

Defendants' attack is untenable. In our view the case at bar is controlled by Johnson v. Muelberger.

Initially, we think it plain that the jurisprudential statements contained in Navarette v. Laughlin, founded (as they were) on the pronouncements in Williams I and Williams II cases, are inapplicable here as the doctrine of the Williams cases has been materially modified by the later jurisprudence of the Supreme Court of the United States. This was recognized by us in Eaton v. Eaton wherein all the recent cases on this subject—viz. Sherrer v. Sherrer, Coe v. Coe, Johnson v. Muelberger and Cook v. Cook, are cited and discussed.

In Johnson v. Muelberger, the Supreme Court had occasion to consider whether or not a collateral attack could be entertained by the courts of the State of New York on a divorce judgment rendered in the State of Florida. There, the daughter of the

first marriage, who was the principal legatee under her late father's will, sought to have the New York State courts decree in the decedent's succession proceedings that her father's third marriage was a nullity on the ground that her father and his second wife were at all times domiciled in the State of New York, when that wife instituted proceedings in Florida which culminated in the granting of a divorce judgment in that State. Although the judgment was regular on its face it was shown, as here, that the second wife did not comply with the jurisdictional ninety-day residence requirement prescribed by Florida law. However, the decedent had appeared by attorney in the Florida court and interposed an answer denying the wrongful acts asserted by his wife but not questioning the allegations as to his wife's residence in that State. The New York Court of Appeals held that, whereas the decedent was bound by the Florida judgment, his daughter was a stranger to the divorce action, and, as such, she could collaterally attack her father's Florida divorce in New York, if she could have attacked it in Florida. And the court concluded that Florida would permit "a stranger" to collaterally assail a Florida divorce decree on jurisdictional grounds even though the defendant had entered a personal appearance.

This decision was reversed by the Supreme Court. It was found that the New York court erred in holding "a stranger" to

a divorce judgment could attack the decree under the jurisprudence of the State of Florida. The court cited DeMarigny v. DeMarigny (Fla.) 43 So.2d 442 as authority for the resolution that a stranger to a divorce decree could not impeach it.[2] The Supreme Court went on to conclude that, since Florida would not permit Mrs. Muelberger to attack the Florida decree of divorce between her father and his second wife, New York could not entertain the attack by reason of the Full Faith and Credit clause. The Court said:

"When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids."

 This is exactly the case here. Mr. Mire, plaintiff's first husband, filed in

the record in the Mississippi divorce proceedings a waiver of summons and entry of appearance. Issue was thus joined and this was sufficient to foreclose the jurisdictional question as res judicata. The filing of the waiver of summons and entry of appearance pursuant to Chapter 244, Mississippi Laws of 1936,[3] after the institution of the divorce proceeding rendered the judgment unassailable as to Mire. In other words, by his entry of appearance he had an opportunity to litigate the jurisdictional question and this is all that is necessary in order for the Full Faith and Credit Clause to apply.

 It was not obligatory, as the Court of Appeal believed, for Mire to have resisted the granting of the divorce. Indeed, Johnson v. Muelberger does not indicate that active participation by the defendant is necessary. On the contrary the basic ele-

---

2. The Florida court in the DeMarigny case quoted with approval 1 Freeman on Judgments, 5th Ed. 636, Sec. 319, as follows:
"It is only those strangers who, if the judgment were given full credit and effect would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition." (See 43 So.2d at page 447).

3. It provides:
"That any party defendant who is not a minor, lunatic, or convict of felony, may, without filing any pleading there-

in, waive the service of process, or enter his or her appearance, either or both, in any civil cause or proceeding for all purposes, with the same effect as if he or she had been duly served with process, in the manner required by law on the day of the date thereof; provided such waiver of service or entry of appearance be in writing dated and signed by the defendant and duly sworn to, or acknowledged, by him or her, or his or her signature thereto be proven by two subscribing witnesses, before some officer authorized to administer oaths. But such written waiver of service or entry of appearance must be executed after the day on which the suit or proceeding was filed and be filed among the papers in the cause and noted on the general docket."

ment which bars collateral attack here is that the rendering State will not permit such an attack and considers the matter res judicata.[4]

In this connection a word should be said anent defense counsel's contention that the Sherrer, Coe, Johnson and Cook cases envision adversary proceedings and participation by the defendant in the divorce suit filed in the State that renders the decree in order to entitle the judgment to full faith and credit.

It is true that Oklahoma, Wisconsin and New Jersey have thus construed the jurisprudence of the Supreme Court. See Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427 (1949); Davis v. Davis, 259 Wis. 1, 47 N. W.2d 338 (1951) and Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896, 28 A.L.R.2d 1291 (1951).[5]

While we entertain some doubt at the present time that these authorities have correctly interpreted the Sherrer and Coe cases (the Oklahoma and New Jersey cases were decided prior to Johnson v. Muelberger and all were decided before Cook v. Cook), it is not necessary for our decision in this matter to determine whether the Oklahoma, Wisconsin and New Jersey courts are right in their analyses of the views of the Supreme Court. This is so

because the opinion in Johnson v. Muelberger does not turn on Mr. Johnson's active participation in the Florida divorce proceedings but, rather, on the court's conclusion that the divorce decree, not being subject to collateral attack in the State of Florida, was entitled to full faith and credit in all other jurisdictions. See annotation, Foreign Divorce-Recognition-Domicile, 28 A.L.R.2d 1303 et seq., particularly subdivision III, Section 8.7, pages 1328–1332.

█ We hold therefore that this Court must give full faith and credit to the Mississippi divorce since that divorce decree is unassailable in the courts of the state that rendered it.

Eaton v. Eaton, 227 La. 992, 81 So.2d 371 is not apposite here. Mrs. Eaton's right to assail the Arkansas divorce judgment in Arkansas was not questioned in that case. Hence, the ruling in Johnson v. Muelberger, which makes the right to assail the judgment in the rendering court a condition precedent to the right to attack in the courts of all other States in view of the Full Faith and Credit clause, was not appropriate to the Eaton case. Secondly, the opinion in the Eaton case does not clearly indicate that the waiver of summons and entry of appearance signed by Mrs. Eaton was ever

---

4. In the case at bar, it is not disputed that the divorce decree herein assailed is invulnerable to collateral attack in Mississippi under the jurisprudence of that State. See Kirby v. Kent, 172 Miss. 457,

160 So. 569, 99 A.L.R. 1303 and authorities there cited.

5. These cases were referred to approvingly in the opinion in Eaton v. Eaton. (See 227 La. pages 1006–1009, 81 So.2d 371).

filed in the divorce proceedings by anyone. It is merely stated that the entry of appearance was mailed by Mrs. Eaton to her husband and that neither she nor her attorney filed it in the divorce proceedings. Moreover, assuming that the Arkansas statute is substantially the same as the Mississippi statute, the waiver of summons and entry of appearance in the Eaton case would have been legally ineffectual since it was executed prior to the day on which the divorce suit was filed in the Arkansas court.

For the reasons assigned the judgment of the district court, which was affirmed by the Court of Appeal, is reversed; defendants' motion for a summary judgment is overruled and the case is remanded to the district court for further proceedings in accordance with law and consistent with the views herein expressed. All costs in the Court of Appeal and this Court pertaining to the motion for summary judgment are to be borne by the defendants.

SUMMERS, Justice (dissenting).

At the outset, I would emphasize that neither Katherine Boudreaux nor her first husband, against whom she asserts she obtained a divorce, ever lived in Mississippi prior to or at the time when the divorce was obtained. This fact is not disputed. The wife frankly testified that she had no intention at any time of residing in Mississippi, and, at the most, spent about one week there in 1950 when she went to Mississippi to testify and obtain her divorce. She even alleged that her husband, the defendant, was living in Louisiana when the suit was brought.

Mississippi law grants jurisdiction to the Chancery Courts in suits for divorce only when one of the parties has been an actual bona fide resident within the state "for one year next preceding the commencement of the suit." Mississippi Code of 1942, § 2736. It must, therefore, be concluded that the Mississippi courts never had jurisdiction of the persons of either the wife or husband whom it purported to divorce. Louisiana was their state of domicile, and Louisiana's laws controlled their marriage relationship at all times.

The majority opinion is founded solely upon the proposition that the Mississippi decree of divorce cannot be collaterally attacked by defendants here because they could not have attacked that decree in Mississippi. Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951) is relied upon to sustain this position.

It is my opinion that the Johnson Case does not support the view announced by the majority and also that the law of Mississippi permits a collateral attack upon a divorce decree.

The Full Faith and Credit Clause, Article IV, Section 1, of the Constitution of the United States, requires that a judgment of a state court should have the same credit,

validity, and effect in every other court of the United States, which it had in the state where it is pronounced. Hampton v. Mc-Connel, 3 Wheat. 234, 4 L.Ed. 378 (1818). See also 28 U.S.C.A. § 1738. But this doctrine is interpreted by decisions of the Supreme Court of the United States to mean that full faith and credit is to be accorded only when the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person. Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897 (1874). See also Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

Thus, a state court judgment can be made a judgment in a sister state "only if the court purporting to render the original judgment has power to render such a judgment." Williams v. North Carolina, supra, 325 U.S. at 229, 65 S.Ct. at 1095. That is to say, the court rendering the judgment must have jurisdiction.

Where divorce is concerned, the power of courts to grant decrees has always, under our system of law, been founded upon domicile. Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366 (1903); Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804 (1901).

The United States Supreme Court, in interpreting the Full Faith and Credit clause, has decreed certain standards of procedural due process to be observed before judgments changing the status of parties to a marriage may be accorded full faith and credit in a sister state. It seeks thereby to permit a state to vindicate its social policy against the selfish actions of those outside its borders. "The State of domiciliary origin should not be bound by an unfounded, even if not collusive, recital in the record of a court of another State." Williams v. North Carolina, supra, 325 U.S. at 230, 65 S.Ct. at 1095.

Collateral attack of a divorce decree made in another state by proof that the court had no jurisdiction, even when the record purports to show jurisdiction, has long been recognized. German Savings & Loan Society v. Dormitzer, 192 U.S. 125, 24 S.Ct. 221, 48 L.Ed. 373 (1904). And, until the doubt raised by the Johnson Case, it was clear that when the decree was not susceptible to collateral attack in the rendering state, the decree could nevertheless be attacked in a sister state where there was no participation by the defendant in the divorce proceeding and the defendant had not been accorded full opportunity to contest the jurisdictional issues. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948).

This requirement of jurisdiction has not been changed. There was no intention to abandon the jurisdictional requirement in the Johnson Case as this language demonstrates:

" * * * The Framers intended it (the Full Faith and Credit Clause) to help

weld the independent states into a nation by giving *judgments within the jurisdiction of the rendering state* the same faith and credit in sister states as they have in the state of the original forum.

" * * * It leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts *with jurisdiction*." (Emphasis added.)

Thus, where full faith and credit is claimed for a divorce decree in a sister state, inquiry is to be permitted into the authority of the divorce-decreeing state to render that decree—the truth or existence of the crucial fact of jurisdiction upon which the power to decree rests can always be explored. Williams v. North Carolina, supra, and Sherrer v. Sherrer, supra. We recognized these principles in Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955) and Navarette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946).

In the most recent case, Eaton v. Eaton, supra, we reviewed the decisions which sought to establish a standard for guidance when jurisdiction of a divorce-decreeing state is brought into question. The decisions reviewed were Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951); Johnson v. Muelberger, supra; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948) and Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1947).

These cases require that the issue of domicile of at least one of the parties to the divorce be "squarely litigated in a truly adversary proceeding" in the state rendering the decree. See also Williams v. North Carolina, supra. To satisfy the requirement, the court in the Sherrer Case found it necessary that there be "participation by the defendant" in a proceeding in which he had been "accorded full opportunity to contest the jurisdictional issues." In Coe v. Coe, as in the Sherrer Case, the decree of divorce was one which was rendered after proceedings in which there was participation by both plaintiff and defendant and in which both parties were given full opportunity to contest the jurisdictional issue. Defendant there appeared personally and gave testimony at the hearing. Through her attorney she filed pleadings in answer to the complaint and successfully invoked the jurisdiction of a Nevada Court to obtain the decree of divorce. This was held to satisfy the requirements of participation, and full faith and credit was accorded that judgment.

Johnson v. Muelberger involved a like factual situation, and a like result was obtained. That the Johnson Case involved participation by both of the parties in the proceedings leading to the disputed divorce decree is made emphatically clear by the court's statement of the issue at the very outset of its opinion when Mr. Justice Reed wrote:

"The right of a daughter to attack in New York the validity of her deceased father's Florida divorce is before us. She was his legatee. *The divorce was granted in Florida after the father appeared there and contested the merits.* The issue turns on the effect in New York *under these circumstances* of the Full Faith and Credit Clause of the Federal Constitution." (Emphasis added.)

As this language points out, the Johnson Case applies to a situation where both parties appeared personally or by attorney in the proceedings and had every opportunity to contest the jurisdictional issue. It does not apply to the case at bar where the defendant husband made no appearance.

Surely the waiver executed by the defendant husband in St. Mary Parish before a Notary Public there and handled by the wife's attorney thereafter—for the husband was not represented by counsel—could not satisfy the intendment of the law that the divorce must be "squarely litigated in a truly adversary proceeding." This is not a "participation by the defendant" in a proceeding in which he has been "accorded full opportunity to contest the jurisdictional issues." This is not a case where the husband "appeared and contested the merits." "Appearance" in an action in Mississippi can "only be effected by a plea or by appearance in proper person without plea in open court." Chambliss v. Chambliss, 182 Miss. 480, 181 So. 715, 717 (1938); Hemp-

hill v. Hemphill, 34 Miss. 68, 69 (1857); Byrne, Vance & Co. v. Jeffries, 38 Miss. 533 (1860). A waiver cannot supply that requirement. That waiver was not, therefore, a personal appearance; it was noncommittal; it admitted nothing; it denied nothing; it put nothing at issue. It is not the equivalent of an answer in the form of a general denial—for it neither admits facts nor places them at issue by denial, which any answer would certainly do.

I find nothing in the Johnson Case which declares that divorce is no longer within the exclusive power of the domiciliary state so far as the Full Faith and Credit clause is concerned. It is fair to conclude that "The Supreme Court cases fall short of announcing that a state has the power to grant a divorce entitled to full faith and credit on a jurisdictional basis other than domicile." Paulsen, The Power to Divorce—Two Legislative Acts. 40 A.B.A.J. 330 (1954). Sister states "cannot be compelled under the * * * clause * * * to enforce decrees of another state unless the respective courts of the state entertained jurisdiction over the subject matter by virtue of being the domicile of at least one of the parties." Swanson, Migratory Divorce: The Sherrer Case and the Future—A Prophecy. 40 A.B.A.J. 672 (1954).

In the Johnson Case the Court reiterated the rule that "a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that

divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree." In the case at bar the defendant husband had not been personally served nor, as the facts clearly demonstrate, had he entered a personal appearance as contemplated by the cases. Davis v. Davis, 259 Wis. 1, 47 N.W.2d 338 (1951); Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896, 28 A.L.R.2d 1291 (1951); Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427 (1948). The ruling in the Johnson Case, therefore, is based upon a truly adversary proceeding. That is not the case in Mrs. Boudreaux's divorce suit.

What did the Johnson Case mean when it said:

"When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union."?

By considering all of the court's pronouncements in the Johnson Case, to which I have previously alluded, it becomes quite evident that there was no intention to abandon the requirement that there be jurisdiction to render a valid divorce. And the Johnson Case and all of its pronouncements apply only to a situation where there is a truly adversary proceeding and "appearance" which conferred jurisdiction on the rendering state.

Moreover, the majority opinion purports, in one instance, to distinguish Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955) on the tenuous argument that there was no showing that the waiver signed by the defendant wife was ever filed in the proceedings. It appears so obvious that the waiver had been filed that the point seems hardly worth considering. For would the waiver have been mentioned in the case if it had not been filed?

I am further of the opinion that the decree could have been collaterally attacked in Mississippi, for there is no statutory prohibition against such an attack; and the cases relied upon to support the conclusion that there could be no collateral attack on this judgment in Mississippi do not support that conclusion. See Chambliss v. Chambliss, 182 Miss. 480, 181 So. 715 (1938); Kirby v. Kent, 172 Miss. 457, 160 So. 569, 99 A.L.R. 1303 (1935); Hester v. Hester, 103 Miss. 13, 60 So. 6 (1912).

Those cases merely held that the evidence was insufficient to sustain a collateral attack. They did not hold that a collateral attack could not be entertained in Mississippi if the evidence supported the attack. I would say that the majority has failed to draw a distinction between those cases where a collateral attack is permitted but does not succeed on its merits and those cases where the collateral attack is not permitted by reason of a procedural bar.

In the case before us, the collateral attack would clearly succeed because the Mississippi Court had no jurisdiction. Our

court, by its decision, is raising a shield against that attack. By doing so it is abdicating to another state Louisiana's right to determine the marriage status of parties truly domiciled within her borders. In doing so the court is according full faith and credit to a divorce judgment rendered by a state without jurisdiction and, for that reason, rendered under circumstances which do not meet the due process requirements of the State or Federal Constitutions. I do not believe the jurisprudence requires that such a judgment be accorded full faith and credit. Henderson, Due Process as a Limitation on Full Faith and Credit, 4 Baylor L.Rev. 202, 206 (1952).

I respectfully dissent.