STOULIG, Judge.
Plaintiff, Mrs. Lynden Howell Clay, has appealed a judgment that maintained “exceptions of no cause of action and res judicata”[1] and dismissed her divorce action against Louis H. Clay, Jr. In *240 so doing, the trial court accorded full faith and credit[2] to a Nevada judgment of divorce obtained by Louis Clay before plaintiff instituted this suit against him.
The issue raised by this appeal is whether Mrs. Clay may now collaterally attack the validity of the Nevada judgment after having appointed an attorney “or any substitute named by you as my attorney”[3] to appear for her and represent her in these proceedings. It is contended her signature was obtained through the “fraud and bad faith of appellee,” thus the mandate is invalid.
Appellant submits these circumstances prove fraud: In May 1973 Mr. Clay moved from the matrimonial domicile and never returned. In July 1973 Mrs. Clay retained an attorney to represent her in the separation. Her husband was also represented by an attorney who was discharged prior to the retaining of present counsel. Between mid-July and early August, a certified public accountant who was a close friend of both litigants, drafted three separate proposals for a community property settlement. Each time, Mrs. Clay’s attorney conferred with him to suggest changes. It appears from the record that at these early stages the only issue under consideration was the property settlement and both counsel worked through the accountant as an intermediary, rather than discussing this matter directly.
When no agreement had been reached by August 6, 1973, Mr. Clay that day signed a letter prepared by CPA addressed to his own attorney, advising him that he was withdrawing all prior offers of property settlement. The reason assigned for this action is that Clay’s proposals had been more than reasonable, but he concluded, “ * * * Mrs. Clay will never be satisfied respecting any settlement other than that determined by a legal division of the net community marital estate.” Then he directed :
“As a result, I must regretfully withdraw my proposals to date and would request that you inform Mrs. Clay through her counsel, accordingly.” (Emphasis added.)
This document indicated copies were sent to Mrs. Clay, her attorney and the accountant. However, according to the accountant’s testimony a copy of this letter was immediately hand delivered to Mrs. Clay and a copy was mailed to her counsel.
Upon its receipt, Mrs. Clay contacted the accountant, unaware he had written the letter for her husband and asked that he persuade her husband to reinstate the third proposal for settlement of property rights. He suggested this could only be done if she would withdraw her objection to her husband’s plan to obtain a Nevada divorce. Ostensibly acting on the request of the appellant, he went with Mr. Clay to his attorney’s office on the following day with the expectation of completing the interim property settlement on the same day. However, Mr. Clay’s attorney expressed concern that Mrs. Clay was being rushed into signing the agreement and at his insistence the signing was postponed until August 10. Part of the package was that Mrs. Clay *241 would sign a power of attorney appointing an agent in Nevada to appear for her and represent her in the Nevada divorce. On August 10, 1973, Mrs. Clay, accompanied by the accountant, appeared at the office of Mr. Clay’s attorney and executed the agreement[4] drafted by her husband’s lawyer. At that same time she signed the disputed mandate which subsequently was the basis for her vicarious submission to the jurisdiction of a Nevada divorce court. She testified she expected someone to notify her local attorney and was surprised when he did not appear. Conversely, the accountant insists appellant expressly rejected having counsel present at this meeting. Mr. Clay’s attorney apparently expected Mrs. Clay’s lawyer to appear and-inquired after him. The documents were finally signed by Mrs. Clay and no one contacted her attorney to determine whether he was aware of and/or approved of these transactions.
He was only informed of his client’s action after the fact and he immediately telephoned the accountant and Mr. Clay’s attorney to protest the unethical action. In response, defendant’s attorney sent this letter of August 15, which said in part:
“The manner of the execution of the agreement was not my choosing, and I extend to you my sincere apology for any impropriety on my part. It was not intended, and I am truly sorry that it happened the way it did.”
A copy of the interim property settlement was enclosed but counsel did not receive a copy of the power of attorney. However, the agreement indicates Mrs. Clay executed the disputed mandate contemporaneously with the signing of the agreement and clearly states the import of her signature. The divorce was granted September 24, 1975 and nothing was done by Mrs. Clay’s attorney to rescind the power of attorney.
 In the light of this evidence, we find an element of coercion in Mrs. Clay’s execution of the property settlement and power of attorney. We note that Mr. Clay is a major client of the accountant and it is to his financial interest to keep the good will of appellee. Under this circumstance, it was highly improper for the accountant to act as intermediary between the Clays particularly (1) when he drafted the letter that prompted Mrs. Clay’s call and (2) when he was aware she was represented by an attorney. The next aspect of this case suggesting undue influence is the rapidity with which the accountant and Mr. Clay pressed for the execution of the agreement. It deprived appellant of the opportunity to give an informed consent, particularly when she was permitted to sign without the knowledge or approval of her own attorney. Appellee suggests Mrs. Clay, a college graduate who had six months’ experience as a legal secretary, was fully capable of understanding her actions. We cannot agree.
The record suggests Mrs. Clay may have been prompted to sign this agreement on the theory she would receive a larger property settlement. The letter drafted by the accountant stated this was the case. Before she was asked to sign, it was the obligation of Mr. Clay’s counsel to clarify the question of Mrs. Clay’s representation. It was important for her to compare her position in a Louisiana, as opposed to a Nevada, court before she could give an informed consent. We do not think her *242 brief position as a legal secretary would qualify her to understand her options.
However, it is also clear Mrs. Clay’s attorney became fully aware of her actions approximately six weeks before the power of attorney was utilized. He testified he did nothing to revoke the mandate nor did Mrs. Clay. Appellant discharged this attorney in October 1973. The record does not explain what conferences or exchanges there were between Mrs. Clay and her then attorney during late August and September while Mr. Clay was establishing residence in Nevada. We only know there was sufficient time to revoke the power of attorney or take other steps to contest the Nevada divorce, should Mrs. Clay have so desired. She knew her husband was in Nevada for the purpose of securing a divorce and she even sent her children to visit with him there. Therefore, we find even if the mandate was signed under questionable circumstances, it was ratified by her inaction after her attorney had become aware of its execution.
If Mrs. Clay cannot prove fraud in obtaining the mandate, she cannot now collaterally attack the Nevada judgment. Even if she could prove the rendering court lacked jurisdiction for some reason, she is precluded from asserting this claim in a collateral attack if she entered an appearance, participated vicariously in the original proceeding or waived her right to do so.[5] Had it been established Mrs. Clay was fraudulently induced to forego what defense could have been presented, this would constitute extrinsic fraud and she could opt to nullify the judgment in Nevada[6] or collaterally attack it in Louisiana.[7]
The courts of this state have recognized and permitted collateral attacks on foreign judgments procured by extrinsic fraud. This principle is explicitly set forth in West v. Lawrence, 297 So.2d 443, 445 (La.App. 3d Cir. 1974), wherein the court stated:
“Lawrence attacks the validity of the judgment on the grounds that it was obtained through misrepresentation and deceit. Louisiana courts have recognized that extrinsic fraud (such fraud as would prevent prosecution of an effective defense or would prevent an adversary trial of the issues) may be asserted as a bar to recognition of the foreign judgment, while intrinsic fraud (such fraud as would simply amount to an affirmative defense to the original cause of action) would not serve as a defense to the recognition of a foreign judgment. Lee v. Carroll, 146 So.2d 242 (La.App. 3 Cir. 1962).
This distinction between extrinsic and intrinsic fraud is in accord with the interpretation placed on it in the Nevada courts. See Colby v. Colby, 78 Nev. 150, 369 P.2d 1019 (1962).
 The burden of undermining the judgment of a sister state rests heavily on the assailant.[8] In this case Mrs. Clay’s failure to explain her inaction after her attorney became aware of her signing the power of attorney is a fatal flaw in her case. We must hold she failed to carry *243 the burden of proof to establish she was deprived of her defense by extrinsic fraud.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
BEER, J., dissents with written reasons.

. The appropriate plea is estoppel. For a judgment to be res judicata C.C. art. 2286 provides : “ * * * the thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.” There are cases in which Louisiana courts have treated the plea of estoppel as an exception, but more properly, it should be raised as an affirmative defense. See C.C.P. art. 927, Comment (c).

. U.N.Const. Art. 4, § 1 (the Full Faith and Credit Clause) requires judgments rendered in one jurisdiction be accorded the same faith and credit in sister states as they have in the state of the original forum.

.
“New Orleans Louisiana
August 10 1973
TO : HERMAN M. ADAMS, or nominee
Attorney at Law
Las Vegas, Nevada
Dear Sir:
I understand that my husband contemplates filing an action for divorce against me through MICHAEL L. HINES, Attorney-at-Law, Las Vegas, Nevada, in the near future.
I hereby constitute and appoint you or any substitute named by you as my attorney to enter my appearance and rexiresent me in said action at any time after the complaint is filed to the same extent as if I were personally present and you may consent to an immediate trial thereof without notifying me.”

. The instrument in part provides :
“The parties hereto are married to one another but are presently living separate and apart. CLAY intends to dissolve the marriage between the parties hereto by obtaining a divorce in the State of Nevada, and to this end HOWELL will execute a Power of Attorney contemporaneously with the signing of this agreement wherein she will appoint Herman M. Adams, Attorney at Law, to enter her appearance in a Nevada Court and to represent her in the divorce action filed by CLAY in said court.”

. Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951), and Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966), and cases cited in these decisions.

. Colby v. Colby, 78 Nev. 150, 369 P.2d 1019 (1962), stands for the principle that extrinsic fraud can serve as a basis for an action in nullity.

. Liebendorfer v. Gayle, 217 So.2d 37 (La.App. 3d Cir. 1968).

. Berry v. Berry, 307 So.2d 821 (La.App. 3d Cir. 1975).