839 So.2d 1007 (2003)
Leslie DUNN and Gloria Dunn, Plaintiffs-Appellants,
v.
Janet MORTENSON, Temporary Receiver of Austin Forex International, Inc.; International Foreign Exchange Corp.; and Ausforex International, L.L.C., Defendants-Appellees.
No. 36,878-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*1008 David A. Hamilton, Baton Rouge, Baum & Baum, by Brian Baum, for Appellants.
Lemle, Kelleher, Barlow & Hardtner, by Michael B. Donald, Shreveport, Robert W. Kyle, Bickerstaff, Heath, Smiley, Pollan Kever & McDaniel, L.L.P., by Michael Shaunessy, Ann Greenberg, for Appellees.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a summary judgment granted by the trial court in favor of the defendant, Janet Mortenson ("Mortenson"), Temporary Receiver of Austin Forex International, Inc., International Foreign Exchange Corporation and Ausforex International, L.L.C., and against the plaintiffs, Leslie Dunn and Gloria Dunn (collectively "the Dunns"). The Dunns now appeal. For the reasons stated herein, we reverse and remand.

FACTS
In 1998, the State of Texas and the Texas State Board of Securities investigated the activities of three companies, Austin Forex International, Inc., International Foreign Exchange Corporation and Ausforex International, L.L.C. (collectively referred to as "AFI"). Operating in Austin, Texas, AFI was in the business of selling securities to the public in the form of investment contracts involving foreign currency. In the early part of September 1998, the President of AFI, Russell Erxleben ("Erxleben"), began making payments to company investors who were either his family or friends.[1] From September 8, *1009 1998, to September 11, 1998, Erxleben made payments of over $1.2 million to various family and friends. Subsequently, AFI closed its doors on September 14, 1998. Erxleben later pled guilty to securities fraud and was sentenced to serve time in a federal penitentiary. As a result of the securities and pyramid/Ponzi scheme operated by Erxleben and AFI, its investors lost more than $36 million in principal. The instant case arose out of funds that Erxleben paid out to the Dunns before AFI ceased doing business. The Dunns are the parents of Kimberly Erxleben, wife of Russell Erxleben.
On September 18, 1998, proceedings began in Travis County, Texas, district court against AFI and Erxleben. At the request of the Texas Attorney General and the Texas Securities Commissioner, Mortenson was appointed by the district court as temporary receiver over AFI.[2] On April 30, 1999, Mortenson issued a demand letter to the Dunns advising them to return the payments they had received from AFI and Erxleben or they would face being added as parties defendant in the action against AFI and Erxleben.[3] After receiving the demand letter, the Dunns and Mortenson engaged in negotiations concerning the funds at issue; however, on June 10, 1999, the Dunns, residents of Caddo Parish, filed suit against Mortenson in Caddo Parish district court. The Dunns sought a judgment declaring that they were not obligated to return the funds received from AFI and Erxleben. On June 15, 1999, Mortenson filed suit against, among others, the Dunns, in Travis County, Texas.
In the Texas action, the Dunns filed a pleading to make a special appearance in order to assert the defense of lack of personal jurisdiction and a general denial of Mortenson's allegations.[4] They further asked the court to sever and abate the action against them pending resolution of the Louisiana action, since the Texas action was between the identical parties and presented the same issues as those in the Louisiana action.[5] Subsequently, the Texas court severed the action against the Dunns and consolidated it with a separate action that Mortenson had initiated against Kimberly Erxleben. The Dunns made no other appearances and filed no other documents with the Texas court. On January 31, 2002, Mortenson filed in Caddo Parish district court her responsive pleading containing her answer, defenses and counterclaims. Mortenson asked the court to dismiss or stay the instant case while the Texas action proceeded. Mortenson formally *1010 moved for this relief on March 8, 2002; and, on May 26, 2002, the district court denied Mortenson's motions to dismiss or stay the Louisiana action. The Louisiana and Texas actions proceeded simultaneously.
The Texas action was set for trial on May 13, 2002, and the Louisiana action was set for trial on July 23, 2002. On April 2, 2002, the Dunns filed a petition for bankruptcy in the United States Bankruptcy Court, Western District of Louisiana. Mortenson promptly filed a motion to lift the automatic stay in the bankruptcy action to allow her to liquidate her claim against the Dunns. The Bankruptcy Court granted this motion on May 2, 2002. On May 13, 2002, Mortenson appeared for trial in the Texas action, but the Dunns did not make an appearance. Although the record is devoid of any indication that the Texas court made a finding on either the waiver of the Dunns' special appearance or the issue of whether or not the court had personal jurisdiction over the Dunns, the Texas district court found that the Dunns had received adequate notice of the trial on the merits and Mortenson was allowed to proceed, offering testimony of witnesses and introducing evidence. Based upon the evidence, the Texas court rendered judgment in favor of Mortenson and against the Dunns, ordering the Dunns to pay $70,581 in actual damages and $20,536.17 as prejudgment interest on the actual damages; ordering Gloria Dunn to pay $141,162 in exemplary damages for her willful and malicious retention of other investors' money; and ordering Leslie Dunn to pay the same amount for the same reason. The trial court also ordered the Dunns to pay Mortenson $30,000 in attorney fees through trial; $20,000 in the event of an appeal to the Texas Court of Appeals; and $10,000 in the event of an appeal to the Texas Supreme Court. The Dunns did not appeal the Texas court judgment.
Following entry of the Texas judgment, Mortenson sought to amend her answer in the Louisiana action by adding the defense of res judicata to her answer. The court granted leave for her to amend her answer; and, on June 28, 2002, Mortenson moved for summary judgment on her defense of res judicata, attaching a certified copy of the judgment from the Texas court. The Dunns argued against the motion, asserting that the Texas court had no jurisdiction over them because they did not make a general appearance in the Texas court and they properly objected to its lack of jurisdiction.[6] The district court granted summary judgment in favor of Mortenson on July 25, 2002, and dismissed the Dunns' suit for declaratory judgment against Mortenson with prejudice. The Dunns now appeal, raising the following assignment of error:
The district court erred when it granted defendant's motion for summary judgment dismissing Leslie Dunn and Gloria Dunn (sic) (plaintiffs) demands against Janet Mortenson, permanent receiver for Austin Forex International Inc.; International Foreign Exchange Corp.; and Ausforex International, L.L.C. (Defendant) based upon the res judicata of the Texas judgment because the Texas judgment is not res judicata in that it does not involve the same causes of action between the same parties and it was not rendered by a court which had proper jurisdiction.

*1011 DISCUSSION
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hospital, Inc. 93-2512 (La.7/5/94), 639 So.2d 730. An appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate. The questions asked are found in La. C.C.P. art. 966(B), which, in pertinent part, asks every court:
Whether first, there is any genuine issue of material fact in dispute, and second, whether the mover is entitled to judgment as a matter of law.
Even if the first question is answered in the negative, if the second question cannot be answered in the affirmative, then summary judgment cannot be granted.
Since our system of jurisprudence is a union of states each having its own judicial system capable of adjudicating the rights and responsibilities of the parties brought before it and because there is always a risk that two or more states will exercise their power over the same case or controversy, with the uncertainty, confusion and delay that necessarily accompany relitigation of the same issue, the Framers of our Constitution provided that:
Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State. U.S. Const. art. IV, § 1; Underwriters National Assurance Company v. North Carolina Life and Accident and Health Insurance Guaranty Association, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982).
The structure of our nation of states, each possessing equal sovereign powers, however, dictates some basic limitations of the full faith and credit principle. It is established that a court in one state, when asked to give effect to the judgment of a court in another state, "may constitutionally inquire into the foreign court's jurisdiction to render that judgment." Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). "A judgment of a court in one state is conclusive upon the merits in a court in another state only if the court in the first state had power to pass on the meritshad jurisdiction, that is, to render the judgment." Id. (Emphasis added.) Consequently, before a court is bound by the judgment rendered in another state, "it may inquire into the jurisdictional basis of the foreign court's decree." Underwriters National Assurance Company, supra. (Emphasis added.) If that foreign court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given to the sister state's judgment. Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).
The Supreme Court has held that, "it is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties." Underwriters National Assurance Company, supra. "The requirement that a court have personal jurisdiction recognizes and protects an individual liberty interest, which flows from the Due Process Clause." Schultz v. Doyle, 00-0926 (La.1/17/01), 776 So.2d 1158. The test for personal jurisdiction requires that "the maintenance of the suit... not offend traditional notions of fair play and substantial justice." International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the `minimal contacts' with that state that are a prerequisite to its existence of power over him." Id. Restrictions on the jurisdiction of foreign courts over out-of-state defendants are more than a guarantee of immunity from inconvenient or distant litigation. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
*1012 "They are a consequence of territorial limitations on the power of the respective States." Id.
In the case sub judice, Mortenson argues that the res judicata effect of the Texas court's judgment precludes relitigation of claims that have already been adjudicated. This argument, however, misses the crucial step of first determining whether or not the Texas court had jurisdiction to hear the claims against the Dunns. A foreign court judgment can be made a judgment in a sister state "only if the court purporting to render the original judgment has power to render such a judgment." Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).
The relevant law to determine whether the foreign court had personal jurisdiction is the law of the forum state rendering the original judgment. Lepard v. Lepard, 31,351 (La.App.2d Cir.12/9/98), 722 So.2d 367. Mortenson argues that, according to Texas law, the Dunns waived their special appearance in Texas and submitted themselves to the jurisdiction of the Texas court, citing the opinions of two Texas courts, namely Bruneio v. Bruneio, 890 S.W.2d 150 (Tex.App.-Corpus Christi 1994, no writ), and Steve Tyrell Productions, Inc. v. Ray, 674 S.W.2d 430 (Tex. App.-Austin 1984, no writ). In both of these cases the Texas courts held that, under Texas Rule of Civil Procedure 120a, when an out-of-state defendant files a special appearance in Texas challenging personal jurisdiction of the Texas court, the defendant must seek a hearing on this issue or, in effect, he will waive his special appearance and the trial court will then have proper jurisdiction over the case.[7] On *1013 review of the Texas default judgment and the record in its entirety, we determine that both Bruneio and Steve Tyrell Productions, Inc. are distinguishable from what occurred in the instant case. In Bruneio and Steve Tyrell Productions, Inc., both Texas trial courts made specific findings that they had personal jurisdiction over the defendants. In the case sub judice, on the record before us it appears that the Texas trial court neither addressed the issue of whether or not the Dunns waived their special appearance nor did the court make a finding as to whether or not it had personal jurisdiction over the Dunns. It is on these two points that the Dunns rely in arguing that the Texas judgment is not entitled to full faith and credit. We can find no Texas case that holds that a Texas trial court does not have to make a specific finding of whether or not it has personal jurisdiction over an out-of-state defendant. We further note that Texas Rule of Civil Procedure 120a(2) sets forth that, "[a]ny motion to challenge the jurisdiction provided for herein shall be heard and determined before ... any other plea or pleading may be heard." (Emphasis added.)
Louisiana courts in the past have also addressed similar personal jurisdiction issues. Significantly, none of these courts have held that the law in Louisiana requires a Louisiana court to give full faith and credit to a judgment from a foreign court when the foreign court made no specific finding that it had personal jurisdiction over the out-of-state defendant. In Allenberg Cotton Company, Inc. v. Stacy, 384 So.2d 514 (La.App. 2d Cir.1980), we stated that, in order to give full faith and credit to a foreign judgment, it is not required that the question of personal jurisdiction be actually litigated in the rendering state, but "only that the opportunity be afforded to the out-of-state defendant to litigate the jurisdictional question" before the foreign court. In Allenberg Cotton Company the defendant had the opportunity to litigate the issue of personal jurisdiction in the foreign court and the court specifically found that it had jurisdiction over the out-of-state defendant.[8]
In Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966), our supreme court found that, when a person waives service of process and enters a general appearance before a foreign court, this is "sufficient to foreclose the jurisdictional question as res judicata," rendering the foreign judgment unassailable.[9] Since there was consent to the jurisdiction of the foreign court, there was no need for the foreign court to make a specific finding of personal jurisdiction.
*1014 More recently, one of our sister circuits, in Essex Crane Rental Corp. v. D & L Machine Works, 93-1656 (La.App. 3d Cir.10/5/94), 643 So.2d 913, writ denied, 94-2742 (La.1/6/95), 648 So.2d 932, faced a similar factual situation. The court in Essex Crane Rental Corporation followed our reasoning in Allenberg Cotton Company, supra, finding that, even though the defendant did not appear at the proceedings in a Texas trial court, a Texas default judgment should be given full faith and credit in Louisiana because the plaintiff had been given his opportunity to challenge the jurisdiction over him in Texas. In Essex Crane Rental Corporation, however, like each of the other cases cited herein, in addition to the defendant having had his opportunity to challenge jurisdiction, the Texas court specifically found that it had jurisdiction over him.[10]
The premise of the holdings in Boudreaux, supra, Essex Crane Rental Corporation, supra, and Allenberg Cotton Company, supra, that it is necessary for a Louisiana court to give full faith and credit to a foreign judgment as long as the out-of-state defendant is given an opportunity in the foreign court to challenge jurisdiction over him, is based on either the fact that the foreign court made a specific finding that it had jurisdiction over the defendant or because the defendant submitted himself to the jurisdiction of the court in the foreign state. All three holdings are distinguishable from the case sub judice because, here, the Dunns did not consent to jurisdiction of the Texas court and we find no evidence in the record that the Texas trial court ever made a specific finding that it had personal jurisdiction over the Dunns. Mortenson, in effect, is asserting that Louisiana courts are required to give full faith and credit to a foreign judgment when the foreign court made no specific finding that it has personal jurisdiction over the out-of-state defendant. As previously stated, no court in Louisiana has held that, under the law in Louisiana, a Louisiana court is so required and we decline to make such a ruling here.
We have, however, previously held that a Louisiana trial court is obligated to consider and rule upon whether a sister state's judgment is entitled to full faith and credit. Holiday Hospitality Franchising, Inc. v. Grant, 36,035 (La.App.2d Cir.5/8/02), 817 So.2d 449. In the instant case, our Louisiana court should afford full faith and credit to the Texas judgment if further evidence is provided to the court showing that the Texas trial court had personal jurisdiction over the Dunns. Accordingly, we find that, on the record before us, the trial court erred in granting the motion for summary judgment and that Mortenson is not entitled to judgment as a matter of law.

CONCLUSION
For the foregoing reasons, the judgment of the trial court against Plaintiffs, Leslie Dunn and Gloria Dunn, is reversed and this case is remanded with instructions for the trial court to conduct an evidentiary hearing to determine whether it should afford full faith and credit to the Texas judgment. Costs of this appeal are assessed to Defendant, Janet Mortenson.
REVERSED AND REMANDED.
NOTES
[1] Erxleben was charged with operating a pyramid/Ponzi scheme where original investors of the companies where paid out of funds received by later investors, causing the original investors to think that the company was making a profit.
[2] The Texas court later confirmed Mortenson as the permanent receiver for AFI on June 25, 1999.
[3] The Dunns received $20,102.52 from AFI and Erxleben, after originally investing $20,000.
[4] In Texas, the special appearance is the procedure by which a defendant objects to the court's power to exercise personal jurisdiction under constitutional due process. The special appearance must be the first pleading the defendant files or he waives any denial of jurisdiction of the Texas court. In a special appearance, the defendant challenges personal jurisdiction by pleading and proving that (1) it is not a Texas resident; (2) it did not have minimum contacts with Texas; and (3) even if it had some minimum contacts with Texas, the assumption of jurisdiction will offend traditional notions of fair play and substantial justice. The special appearance is found in Rule 120a of the Texas Rules of Civil Procedure.
[5] In Texas, a plea in abatement raises defects not apparent from the face of the pleading that prevent the case from going forward in its present state, such as when a case is pending in another court. The plea in abatement is found in Rule 93 of the Texas Rules of Civil Procedure.
[6] The Dunns also argue that Mortenson's motion for summary judgment based on res judicata is, in reality, an exception of res judicata. Since it is an exception, the Dunns contend that Mortensen has not carried the burden required of her to prove that the Texas action should be given full faith and credit.
[7] Although these Texas opinions have interpreted the Texas Rule of Civil Procedure 120a to compel defendants to seek a hearing on the issue of a special appearance within a reasonable time or else it is waived, we note that the actual Rule does not so require. Texas Rule of Civil Procedure 120a provides:

1. Notwithstanding the provisions of Rules 121, 122, 123, a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amendable to process issued by the courts of this State. A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. Every appearance, prior to judgment, not in compliance with this rule is a general appearance.
2. Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof.
3. The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. The affidavits, if any, shall be served at least seven days before the hearing, shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
Should it appear to the satisfaction of the court at any time that any of such affidavits are presented in violation of Rule 13, the court shall impose sanctions in accordance with that rule.
4. If the court sustains the objection to jurisdiction, an appropriate order shall be entered. If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance shall not be deemed a waiver of the objection to jurisdiction when the objecting party or subject matter is not amendable to process issued by the courts of this State.
[8] The court found that,

"At trial it was noted that, the Tennessee court had found it had jurisdiction over the defendant."
[9] In Boudreaux, the party at issue executed a waiver of service and entry of appearance, which stated,

`I the undersigned, Owen J. Mire, being advised that my wife, Katherine G. Mire has filed a suit in the Chancery Court of Harrison County, Mississippi against me for a divorce, do hereby waive the service of process on me and do enter my appearance in said cause and consent that the same be tried at the September, 1950 term of said court or at any succeeding time thereof.'
[10] The court found that,

"The judgment reflects the Texas court's specific finding that it had subject matter over the dispute and personal jurisdiction over the defendant."